## EMPLOYMENT AGREEMENT

## SHAREHOLDER PHYSICIAN

THIS AGREEMENT, is made and entered into this the __/2__ day of __Dec.__, 1994, by and between GILBERT, BARBEE, MOORE & McILVOY, P.S.C., a Kentucky Professional Service Corporation d/b/a Graves-Gilbert Clinic (hereinafter called the "Employer"), and ██████ ██████████████████████ (hereinafter called the "Employee"),

WITNESSETH, that in consideration of the mutual covenants and undertakings hereinafter set forth, the parties agree as follows:

1. <u>Term.</u>   The Employer hereby employs the Employee as a physician whose specialty area shall be PULMONARY MEDICINE to perform services for the Employer for and on behalf of the Employer and to perform all acts and undertakings necessary or incidental thereto under the direction and control of the Employer as set forth hereinbelow; the Employee hereby accepts such employment with the Employer, for an indefinite period of time commencing on the 12TH day of JULY, 1994, however, either party may terminate said employment at any time upon written notice to the other party given at least six months in advance of such termination. Said notice shall be deemed effective on the last day of the calendar quarter in which such notice is given. The Employer agrees that such notice shall not be given except upon a vote of ███ of the voting power of the shareholders of the Employer. "Voting Power" as used in this agreement shall mean the total number of votes entitled to be cast by the shareholders of the Employer at the time any particular vote is taken. The term of this agreement is also subject to the provisions of Section 16 relative to immediate termination.

Failure by either party to comply with the applicable six months written notice requirement shall constitute a breach of this contract. The parties acknowledge that such breach will result in substantial damage to the other party, the full extent of which is

impossible to determine accurately. Accordingly, the parties hereby agree that unless this contract is terminated for cause pursuant to the provisions of Section 16 hereinbelow, in the event either party fails to give the other party the six months notice required in this Section 1, then in that event the party who fails to give the notice required in this section shall pay as liquidated damages to the other party an amount equal to ██████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ Such liquidated damages are not intended as a penalty, but instead are a stipulated measure of the damages resulting from such breach of contract.

2. <u>Services of Employee.</u> Employee hereby agrees to devote the Employee's best efforts and full time to the conduct of the medical practice of the Employer. In rendering services as an employee, the Employee shall at all times be subject to the full control and instructions of the Employer. Specifically, the Employee will be available to see Clinic patients in accordance with the need and in the best interest of the Employer subject to the call schedules of the Employee's specialty area, The Medical Center at Bowling Green and HCA Greenview Hospital (as these two hospitals are presently known), provided that the Employee may accept any elective or appointive office or position within any duly recognized medical association or hospital and may attend medical meetings and conventions provided such activities, in the opinion of the Employer, do not require an unreasonable amount of Employee's time and do not otherwise adversely affect the Employer's interests. Any other departures from the Employee's full time devotion and attention to the Employer's business and patients shall be permitted only as mutually agreed in writing between the parties.

Employer shall provide to the Employee support for the Employee's practice, consistent with the ordinary needs of those physicians practicing in the Employee's specialty as determined by the Employer. The Employee shall not form an association with nor work for any individual, firm or corporation engaged in the same or similar activities now or hereafter carried on by the Employer during the term of this agreement without the prior written consent of the Employer. During the term of this agreement, the Employee shall keep, maintain and update medical records as desired by the Employer and pursuant to hospital guidelines. Patients treated by the Employee shall at all times be regarded as patients of the Employer and not the Employee, and the Employee hereby waives and renounces any interest which the Employee might otherwise acquire in and to the medical practice of the Employer by virtue of rendering services to patients of the Employer. All records and files are and shall continue to be property of the Employer, and in the event of the termination of this agreement, all such records and files shall be retained or disposed of as determined by the Employer. The Employer will allow reasonable access to said records provided the necessary medical authorizations and releases are obtained from the patients and provided further the Employee reimburses the Employer for the copy expense related thereto.

3. <u>Compensation of Employee.</u> Beginning on the date the Employee becomes a shareholder and continuing through the remainder of that calendar year, the Employee shall receive a bi-weekly draw for such services in the amount of ██████. During the following calendar year and during any succeeding years, the Employee shall be paid, on at least a monthly basis, an annual draw equal to at least ██ (unless a lesser percentage is selected by the Employee) of the Employee's total income received from the Employer during the last 12 months subject to modification upward or downward by at least 75% of the voting power of the shareholders of the Employer. Said draw shall be for the period of the Employer's fiscal year

3

**CONFIDENTIAL**

ending December 31, plus any additional amounts of compensation as the Employer may from time to time determine, which additional amounts shall be based on performance and contribution to Employer's medical practice as determined by the Employer.

If the above draw paid to the Employee is less than the amount of compensation to which the Employee is entitled as determined below, the Employee shall be paid an amount equal to such excess. If the above draw is greater than the amount of compensation to which the Employee is entitled, the Employee shall repay to the Employer such excess.

The amount of compensation shall be determined as follows:



4

CONFIDENTIAL



4.  <u>Accounting of Fees for Services.</u>  The Employee shall make and promptly forward to the Employer's business office a proper charge for each service ordered and/or performed.  All accounts receivable belong to and are the property of the Employer.  Except as set forth below, all monies and any other compensation paid to or for the benefit of the Employee for services as a physician or because the Employee is a physician, including but not limited to fees for:  (a) being on the board of any hospital or other entity which is in the medical or drug field, (b) medical directorships, (c) clinics, (d) deposition fees, (e) research, (f) teaching and (g) treatment of patients shall belong to and shall be the income of the Employer and not the Employee; however, any monies received by the Employee as honorariums for speaking engagements or book royalties shall belong to the Employee and shall not be considered

6

income of the Employer. Additionally, any patent payments or compensation in the form of patent royalties shall remain the sole property of the Employee. Also, any military pay shall remain the sole property of the Employee. The Employee shall upon request, promptly render a complete and accurate accounting to the Employer of all earned income (as opposed to investment income) received by the Employee from any source during the period of the Employee's employment. Upon demand, the Employee shall furnish to the management of the Employer, true copies of tax returns for all years that the Employee has been employed with the Employer. However, income listed on said tax returns shall not be voluntarily disclosed to the Employer's board of directors nor to any other physician employee of the Employer to the extent: (1) same does not represent income of the Employer, (2) same does not constitute a conflict of interest, and (3) same does not represent or disclose a violation of any term or condition of this agreement.

5. <u>Maintenance of Professional and Ethical Standards.</u> The Employee recognizes the importance of maintaining the Employer's good reputation among the community and recognizes the importance of maintaining the public trust of the patients, hospitals and others which the Employer serves. The Employee also recognizes that it is in the best interests of both parties to this agreement that said reputation and public trust be maintained. In that regard, the Employee shall always endeavor to render only the highest possible degree of care to the Employer's patients. During the term of this agreement as a condition of continued employment, the Employee shall at all times conduct himself or herself in an ethical and professional manner and shall refrain from any conduct which may diminish: (a) the reputations of either the Employer or the Employee, or (b) the aforesaid public trust.

If because of the Employer's error, mistake, fraud, or intentional act, the Employee is obligated to pay, recompense, refund, or remit to any patient, insurer or governmental agency any

7

funds previously collected for medical services, the Employee shall be entitled to reimbursement of all such refunds, remittances, and or compensation amounts paid by the Employee to the patient, insurer or governmental agency.  If because of the Employee's error, mistake, fraud, or intentional act, the Employer is obligated to pay, recompense, refund, or remit to any patient, insurer or governmental agency any funds previously collected for medical services, the Employer shall be entitled to collect from the Employee as reimbursement all such refunds, remittances, and or compensation amounts paid by the Employer to the patient, insurer or governmental agency.  If both parties suffer a loss as set forth hereinabove, but one party commits fraud or an intentional act and the other party commits an error or mistake, the party who committed fraud or an intentional act shall be responsible to the other party for any such loss.

In the event the acts or omissions of the Employee result in a judgment against the Employer for an amount in excess of the available limits of liability insurance, the Employer may in its discretion seek contribution and or indemnification as against the Employee for all amounts exceeding the liability limits.

6.  <u>Representations of the Employee.</u>  The Employee represents and warrants as a condition of the Employee's present and future employment that:

A.  the Employee has never had any medical license or any hospital privileges suspended or revoked, nor has the Employee ever been named as a party defendant in any civil suit alleging professional negligence or unethical behavior nor has anyone ever made any claim with any licensing board, hospital, insurance carrier, former employer of the Employee or with the Employee himself or herself alleging any professional negligence or unethical conduct except as follows: _____

_____

_____

8

(none exist if this space is left blank). Should any of the above-mentioned acts or occurrences hereafter take place, the Employee shall immediately notify the Employer of same in writing. Upon request by the Employer's board of directors, the Employee shall execute a written release to allow the Employer to make inquires to the National Data Bank regarding any matters set forth in this Subsection 6A.

B.  the Employee shall disclose in writing to the management of the Employer any direct or indirect ownership interest of any business or entity that provides health care services or sells equipment, drugs or any other goods distributed in the health care field.  Ownership of any stock of any publicly traded company is specifically excluded from this requirement;

C.  the Employee is not currently receiving any treatment or counseling for active alcoholism, drug dependency or substance abuse and should any such treatment occur in the future, the Employee shall immediately notify the Employer in writing of same;

D.  the Employee does not use any illegal drug and does not use any controlled substance except as may be prescribed by another licensed physician;

E.  the Employee knows of no condition, reason or problem due to a physical, emotional or any other cause that would interfere with the Employee's ability and efforts to fulfill the Employee's obligations pursuant to this agreement, but for conditions that could be overcome by the following "reasonable accommodations" as that term is defined in the Americans with Disabilities Act as codified in 42 USC § 12111(9) as same may be amended from time to time: _____

_____

_____

(none exist if this space is left blank). Should such a condition, reason or problem hereafter arise, the Employee shall upon discovery notify the Employer in writing of same;

9

F. the Employee warrants that the Employee has a current Kentucky Medical License and Drug Enforcement Administration Narcotics License and the Employee shall immediately notify the Employer in writing if the Employee ever has knowledge that either of said licenses are or will be restricted, suspended, revoked or modified;

G. the Employee warrants that the Employee is not currently in default on any loans made, administered or guaranteed by the Federal Government, any State Government, or any agency of either. Should any governmental entity attempt to collect on any such loan through withholding, seizure or garnishment of any portion of any payments due the Employer, the Employee agrees that the Employee will immediately indemnify and hold the Employer harmless from any and all losses and diminished income as a result of said withholdings, seizures, and/or garnishments together with interest at the legal rate.

7. Impaired Physician. The Employer will consider the Employee to be an impaired physician if the Employee is unable to practice medicine with reasonable skill and safety to patients by reason of physical or mental illness, including deterioration through the aging process, loss of motor skills, alcoholism or drug dependency. The Employee agrees to abide by the Employer's written policies and procedures for managing impairment provided the policies were adopted by at least 75 percent of the voting power of the shareholders of the Employer, and provided said procedures are consistent with the Americans with Disabilities Act and all other applicable federal and state statutes.

8. Hospital Privileges. The Employee shall before the effective date of this agreement obtain full hospital privileges with the two hospitals located in Bowling Green, Kentucky which are presently known as The Medical Center at Bowling Green and HCA Greenview Hospital and shall maintain said hospital privileges with both of said hospitals continuously throughout the Employee's term

10

CONFIDENTIAL

of employment. If any of an Employee's hospital privileges are revoked or suspended for an indefinite period which actually exceeds 15 days, or for a definite period exceeding 15 days, the Employee shall immediately notify the Employer of the suspension or revocation. Any deviation from the requirements of this Section 8 must be approved in writing by the Board of Directors of the Employer.

9. <u>Vacation, Medical Meetings and Practice Coverage.</u> Junior shareholders shall be allowed up to ▮▮▮ weeks vacation and up to two weeks to attend medical meetings, while senior shareholders shall be allowed up to ▮▮▮ weeks vacation and up to two weeks to attend medical meetings each 12 month period the junior or senior shareholder is employed. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Employee must arrange for practice coverage for any absences from the Employee's employment. The Employer reserves the right to approve or disapprove all practice coverages. Said vacation and meeting time shall be pro-rated during the Employee's last year of employment if said termination date is not the anniversary of the commencement date of this agreement. For instance, if the commencement date of this agreement is February 1st and if the employment terminates on August 1st of any year, the Employee would be entitled to one-half of the annual vacation and meeting time set forth above for the final six months of the Employee's employment. Any periods allowed for vacation and/or medical meetings aforesaid which are unused may not be carried over from one year to the next. The scheduling of all vacation and medical meeting time shall be subject to the Employer's approval and each month during the term of this

11

employment, the Employee shall continue to keep a record of the number of vacation and meeting days that have been used over the previous 12 months.  Any excess vacation and meeting time must be approved in advance by the Employer.

10. Parental Leave.  Upon written request, and following the depletion of vacation time, parental leave will be granted to permit the Employee to care for a newborn or newly adopted child. The request must be submitted 90 days in advance when possible. Such parental leave may not exceed 60 days.  During such parental leave, the Employee shall continue to receive a draw for services rendered subject to the provisions of Section 3 relative to compensation and employee benefits will be maintained in effect. Upon the Employee's return from parental leave, the Employer will return the Employee to the same position that the Employee occupied immediately prior to taking parental leave.  If the Employee does not return from parental leave at the agreed upon time and the Employer has not granted a prior written extension of the parental leave, the Employer may at its option terminate the Employee and/or hire someone else to fill the position previously performed by the Employee.   Notwithstanding the foregoing language, the Employer shall always endeavor to act in compliance with applicable laws regarding family leave.

11. Military Leave.  Following depletion of vacation time, the Employee shall be allowed to take voluntary military leave, provided at least ▮▮▮▮▮ of the voting power of the Employer's shareholders have approved said voluntary military leave.  During the period of voluntary military leave, the Employee's benefits will be maintained in effect subject to the provisions of the respective plan documents.   If the Employee is required to participate in involuntary military service, the Employee shall be considered to be on leave of absence.  Employee benefits will be maintained in effect during the first year of involuntary military service, subject to the provisions of the respective plan

12

CONFIDENTIAL

documents. Any military leave, whether voluntary or involuntary, shall be subject to the provisions of Section 3 relative to compensation. However, any military pay received by the Employee shall remain the sole property of the Employee.

12. Retirement. Upon attainment of age 65, the Employee shall inform the Employer, in writing, of his or her plans for retirement. Distribution of any pension and/or profit sharing funds shall be payable per the terms of the plan documents as same may be modified and amended by the Employer from time to time; same shall be available for inspection by the Employee at any reasonable time.

13. Death Benefit. If the Employee dies during the term of this employment agreement, then upon death, the Employee's surviving spouse, or if there be no surviving spouse, the Employee's estate, shall be entitled to compensation in the amount of ███████████████████████ from the Employer.

14. Insurance:

A. Health Insurance. The Employer shall provide to the Employee health insurance covering the Employee, the Employee's spouse and dependent children to the extent allowed by and pursuant to the terms of the group health insurance policy of the Employer, as such policy may from time to time be amended, modified, or replaced by the Employer or its insurance carrier. Said insurance shall be on such terms and conditions as is customarily provided for other shareholder physician employees.

B. Life Insurance. The Employer shall provide to the Employee a term life insurance policy payable to the Employee's designated beneficiary. Said insurance shall be on such terms and conditions as is customarily provided for other shareholder physician employees in accordance with their status as either a junior or senior shareholder.

C. Disability Insurance. The Employer shall secure disability insurance paying benefits in an amount equal to two-

thirds of the amount shown on the Employee's eligible W-2 earnings payable in monthly installments subject to a waiting period of 90 days from the onset of disability. All such payments made pursuant to the terms of such disability insurance policy shall belong to the Employee. The Employer in its sole discretion may elect to cause the length of the waiting period to be increased or decreased; however, during any such waiting period the Employer shall pay to the Employee the Employee's salary as set forth in Section 3 above (including the end of the year adjustments mentioned in Section 3). The Employee may independently purchase additional insurance through the Employer's group plan as long as the Employer offers such insurance.

D. <u>Compliance with Employer's Insurance Plan.</u> The health, life and disability insurance described above shall at all times and in all respects be governed by the provisions of the Employer's health, life and disability insurance plans. In the event of a conflict between the terms of this agreement and the terms of any such plan, the terms of the applicable plan shall prevail. The Employee acknowledges receipt of a copy of all of said plans presently in force and further acknowledges that the Employee has read same. The amounts, terms, conditions and carriers of all of such health, life and disability insurance policies may be modified or replaced from time to time by the Employer.

E. <u>Malpractice Insurance.</u> Malpractice insurance shall be provided to the Employee and paid for by the Employer on such terms and conditions and in such amounts as desired by the Employer. Tail coverage insurance shall be provided to the Employee and paid for by the Employer in an amount and on such terms as are desired by the Employer; this tail coverage shall be provided to insure against claims relating to medical services performed by the Employee after the commencement date of this agreement while an employee of the Employer; provided however that in the event any material representation of the Employee at any time proves to be

14

false, or the Employee fails to fulfill any other term or condition of this agreement, the Employer shall from that date forward no longer be obligated to provide any such tail coverage insurance. If because of the foregoing, the Employer is not required to purchase said tail coverage insurance, the Employee shall purchase and pay for same; such insurance shall name the Employer as an insured and the Employee shall upon request furnish to the Employer proof of such insurance.

F.  Liability Insurance.  The Employee shall provide the Employee's own vehicle and shall pay all expenses incurred in connection with its use.  The Employee agrees to carry insurance on each vehicle the Employee uses while performing services as an employee pursuant to this agreement with minimum limits for bodily injury, liability and property damage liability as established from time to time by the Employer.  Said limits presently are in the following amounts: ███████████████.  The Employee further agrees to carry homeowner's or renter's insurance or similar insurance as applicable with minimum comprehensive personal liability limits as established from time to time by the Employer.  Said limits presently are as follows: ████████.  Upon request, the Employee shall promptly provide certificates of insurance to the Employer attesting to the above minimum limits and shall furnish additional certificates evidencing continued coverage in the amounts as set forth hereinabove.

15.  Stock Purchase Requirements.  The Employee shall purchase stock in the Employer and in Clinic Building, Inc. as set forth in Exhibit B which is attached hereto and made a part hereof as if copied fully herein.  If in the future stock purchase requirements of the Employer or Clinic Building, Inc. are decreased, the Employee shall only be required to purchase stock in accordance with the new stock purchase requirements.

16.  Immediate Termination.

A.   Notwithstanding the language set forth in Section 1 to the contrary, the Employee's employment hereunder may be terminated by the Employer for cause at any time without advance notice including but not limited to the following causes:

i.   Permanent or temporary revocation, suspension, modification or restriction of the Employee's Kentucky medical license.

ii.   Failure to remit any monies received by the Employee that belongs to the Employer pursuant to Section 4.

iii.   Conviction of any felony.

iv.   If any representation set forth in Section 6 hereof proves to be false.

v.   Any violation of Section 8 hereof.

vi.   Failure to purchase stock in accordance with provisions of Section 15 hereof.

B.   Notwithstanding the language set forth in Section 1 to the contrary, the Employee's employment hereunder may be terminated by at least ███████ of the voting power of the shareholders of the Employer for cause at any time without advance notice including but not limited to the following causes:

i.   The Employee recognizes that during the course of his or her employment that he or she will become privy to information not available to the general public.  Clinic information which is not available to the general public shall not be willfully disclosed to those who are not employees of the Employer if:  (1) the information is likely to embarrass the Employer, its other employees, or Clinic Building, Inc.; (2) the disclosure is likely to compromise the business plans of the Employer; or (3) disclosure would subject the Employee or Employer to sanctions for violation of anti-trust laws.  The phrase, "clinic information which is not available to the general public," includes but is not limited to compensation arrangements, fee schedules, contracts of the Employer or Clinic Building, Inc., evidence or information obtained by the Employer in the course of the Employer's review or survey of an employee's

16

practice.   Nothing contained in this subsection shall be interpreted as a prohibition against the participation in peer review, nor shall this subsection be interpreted as prohibiting the Employee from testifying in any proceeding when the Employee is compelled to attend pursuant to a duly issued subpoena.

ii.   The imposition of any restrictions or limitations by any governmental, regulatory, or judicial authority having jurisdiction over the Employee to such an extent that the Employee cannot fully engage in the Employee's practice of medicine in Bowling Green, Kentucky for a period of at least 30 consecutive days.

iii.   The disability of the Employee as such term is hereinafter defined.   For purposes of this subsection, the Employee shall be deemed to become disabled if during any year of the term hereof if because of ill health, physical or mental disability or for any other cause beyond the Employee's control the Employee shall have been continuously unable, or shall have failed, to perform the Employee's duties hereunder for 90 consecutive days or if during any year of the term hereof the Employee shall have been unable or shall have failed to perform the Employee's duties for a total period of 120 days either consecutive or not.   For purposes hereof the term "any year of the term hereof" is defined to mean any period of 12 consecutive calendar months of the Employee's continuous employment.

iv.   The Employee's engaging in conduct which the shareholders of the Employer deem to be unprofessional, unethical, immoral or fraudulent or which discredits the Employer or is detrimental to the established policies, character or standing of the Employer.

17. <u>Peer Review, Quality Assurances and Risk Management.</u>   The Employee agrees to abide by any restrictions, limitations or dictates imposed upon the Employee by any review panel or review committee created by the Employer, so long as the review panel or committee operates under rules and guidelines created by at least ███████ of the voting power of the shareholders of the Employer.

17

The Employee releases the Employer and its employees from any claims and causes of action which may hereafter arise because of any participation in peer review by the Employer and/or any of its employees, provided said peer review is conducted in good faith and without malice.

18. Rights of Employee upon the Termination of Employment.

In the event of the termination of the employment of the Employee, either voluntarily or otherwise, for a period of 364 consecutive days, the Employee shall be prohibited from:  a) forming, joining or having any ownership interest in a partnership, corporation or other business entity, a purpose of which is the practice of medicine in any of the following Kentucky counties: Warren, Logan, Butler, Barren, Simpson, Allen and Edmonson counties (hereinafter referred to as "Prohibited Counties"):  b) associating in the practice of medicine in any of the aforesaid Prohibited Counties with any other physician-employee of the Employer, and c) practicing medicine in any form or fashion either individually or otherwise in any of the aforesaid Prohibited Counties.

Immediately upon termination of Employee's employment with Employer, Employee agrees not to commence and to completely and totally cease any and all acts prohibited hereinabove.  Said 364 day period shall end 364 days after Employee completely and totally ceases the acts prohibited by this Section 18.

This restrictive covenant may be enforced by injunctive relief by a court of competent jurisdiction and any physician employee found to be in violation of this section shall be liable to the Employer for all damages arising therefrom.  If the Employee violates any term or provision of this Section 18, the parties acknowledge that such breach would result in substantial damage to the Employer, the full extent of which would be impossible to determine with accuracy.  Accordingly, the parties agree that in addition to the other remedies available to the Employer, including injunctive relief, in the event of any such breach, the Employee

18

CONFIDENTIAL

shall pay to the Employer as liquidated damages an amount equal to



Said liquidated damages are not intended as a penalty, but as a stipulated measure of damages resulting from such a breach of contract.

This restriction may be waived by a vote of the shareholders of the Employer and for said waiver to be effective, same must be: (a) approved by secret ballot by those physician employees representing at least of the voting power of the shareholders of the Employer; and (b) the balloting regarding said waiver must be pursuant to any regular or called meeting of the shareholders of the Employer wherein notice of the proposed vote concerning waiver of this restriction is given at least ten days prior to said meeting.

Notwithstanding any language in this Section 18 to the contrary, the Employee upon the termination of the Employee's employment, shall not be prohibited from owning an interest in the Magnetic Resonance Imaging (MRI) Unit located on Second Street in Bowling Green, the MRI Unit located at Greenview Hospital, the Same Day Surgery Center located at Greenview Hospital or the mobile Tennessee Valley Lithotriptor (which at the present time treats patients at Greenview Hospital). However, all of the other terms and conditions of the aforesaid restrictive covenant shall apply

19

**CONFIDENTIAL**

including the prohibition of the practice of medicine by the Employee at those entities as well as elsewhere.  If the Employee is interested in investing in a medical service corporation and would like such an investment added to the above list of exceptions, the Employee may request that the Employer review and make a determination (in its discretion) if such investment will be added to the list described in the first sentence of this paragraph.

In the event any portion of this Section 18 is deemed to be void and/or unenforceable by a final judgement of a court of competent jurisdiction, then in that event, this Section 18 (including the termination date of the 364 day period) shall be modified so as to be enforceable.

19.  <u>Agreement Not Assignable.</u>  Except as otherwise expressly provided, the Employee agrees on behalf of the Employee, the Employee's personal representatives, heirs, legatees, distributees and any other person or persons claiming any benefits under him or her or by virtue of this agreement that this agreement and the rights, interests and benefits hereunder shall not be assigned, transferred or pledged in any way by the Employee or any such person and shall not be subject to execution, attachment or similar process.  Any attempted assignment, transfer, pledge or other disposition of this agreement or any such rights, interests and benefits contrary to the foregoing provisions or the levy or any similar process thereupon shall be null and void and without effect.

20.  <u>Amendments.</u>



21. <u>Agreement.</u>   This contains the entire agreement of the parties.   Any existing agreements between the Employer and Employee shall continue in full force and effect until such time as this agreement becomes effective.

22. <u>Miscellaneous.</u>   Any term, section or phrase of this agreement which is determined by a final order or judgment of a court of competent jurisdiction to be unenforceable or in violation of governing law shall be deemed to be severed from this agreement and it is the intent of the parties that the remainder of this agreement shall remain in full force and effect without such offending term, section or phrase. Any reference to either gender shall as appropriate be deemed to refer to the other gender. Section headings are designated for the convenience of the parties only, and the matters contained within the sections are not intended to be limited to the topics of each section heading.

IN WITNESS WHEREOF, the Employer has caused this agreement to be executed, and the Employee has signed the Employee's name, this 12 day of _Dec_ , 19 94 .

GILBERT, BARBEE, MOORE & McILVOY, P.S.C.

NELSON B. RUE, JR., M.D.                       PRESIDENT

EMPLOYEE

21

STATE OF KENTUCKY

COUNTY OF WARREN

The foregoing instrument was acknowledged before me this the 12th day of December , 1994 by Nelson B. Rue, Jr., M.D. who is President of Gilbert, Barbee, Moore & McIlvoy, P.S.C., a Kentucky professional service corporation, on behalf of the corporation.

<u>Patricia Bunch</u>
NOTARY PUBLIC

My Commission Expires: 5-20-97


STATE OF <u>Kentucky</u>

COUNTY OF <u>Warren</u>

The foregoing instrument was acknowledged before me this the 12th day of December, 1994 by ███████████

███████

<u>Patricia Bunch</u>
NOTARY PUBLIC

My Commission Expires: 5-20-97

22

**CONFIDENTIAL**

## EXHIBIT A

### Computation of Volume of Service



### Computation of Individual Shareholder Physician's Income

## EXHIBIT A

## EXHIBIT A

## Example of Computation of Volume of Service
(Continued)



## EXHIBIT B

### STOCK PURCHASE REQUIREMENTS FOR SHAREHOLDER PHYSICIAN



EXHIBIT B

STOCK PURCHASE REQUIREMENTS FOR SHAREHOLDER PHYSICIAN